UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAKE LITE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-CV-337 JD |
| | ) |
| UNIVERSAL FOREST PRODUCTS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

This case arises out of the parties' exploration of a joint product development and distribution project. According to the plaintiff, Lake Lite Inc., it disclosed various intellectual property and proprietary information relating to one of its new products to the defendants, subject to a mutual non-disclosure agreement. The defendants ultimately declined to enter a license agreement, yet they allegedly developed and began marketing the product anyway. Lake Lite thus filed this suit, asserting claims of copyright infringement, patent infringement, breach of contract, breach of the implied duty of good faith, violation of the Indiana Trade Secret Act, and unjust enrichment. Two of the defendants, Universal Consumer Products, Inc. and Maine Ornamental, LLC, answered the complaint, while the third defendant, their parent company, Universal Forest Products, Inc., moved to dismiss the claims against it for lack of personal jurisdiction. [DE 20]. For the following reasons, the Court grants the motion.

### I. FACTUAL BACKGROUND

Lake Lite is in the business of designing and selling dock lights and other related products and accessories in the boating/dock industry. [DE 1]. It is incorporated in the State of Indiana, and its principal place of business is in Laotto, Indiana. In April 2012, Lake Lite began

rolling out a new line of solar dock light products, including its Solar Dock Dots. It began accepting orders and shipping the products to consumers and retail distribution customers in the following months. In July 2012, a Lake Lite employee was contacted by Rick Preble of Universal Forest Products, which is incorporated and has its principal place of business in Michigan. Mr. Preble inquired as to the possibility of collaborating with Lake Lite to provide the Solar Dock Dot products to Universal Forest Products' customers, or for Universal Forest Products to license the products from Lake Lite. Lake Lite forwarded samples of the products to Universal Forest Products on August 22, 2012, and representatives from the companies met the following month. The record does not reflect the location of that meeting or of any of the other communications.

Following that meeting, Lake Lite entered a mutual non-disclosure agreement with Universal Consumer Products, Inc., a subsidiary of Universal Forest Products. Thereafter, Lake Lite forwarded copies of copyrighted design work for the Solar Dock Dot products to Universal Forest Products. At Universal Forest Products' requests, Lake Lite also completed a series of modifications to the product design. Lake Lite was assured by a Universal Forest Products employee that it was protected by the non-disclosure agreement it had signed. It also had a number of contacts by email with Universal Forest Products employees relative to different aspects of the project during this time. The record does not indicate where the Lake Lite employees involved in these interactions were located, though, or where Lake Late completed the product modifications. Ultimately, the parties were unable to reach a licensing agreement, and they discontinued contact in August 2013.

On September 17, 2014, Lake Lite's founder and president, Jeffrey Martzall, visited a Lowe's store, where he found a product for sale named Solar Deck and Dock Lights. The

product was sold under the brand name of Maine Ornamental, which is another subsidiary of Universal Forest Products.[1] Lake Lite contends that this product is the embodiment of the product Lake Lite designed and developed, and that sale of that product violated several of its intellectual property rights, as well as the non-disclosure agreement. It therefore filed a seven-count complaint against the three related companies in federal court in the Northern District of Indiana. Universal Consumer Products and Maine Ornamental appeared and filed an answer, but Universal Forest Products moved to dismiss for lack of personal jurisdiction, arguing that it has had no relevant contacts with the State of Indiana. Lake Lite did not seek any jurisdictional discovery, but filed a response brief to which it attached an affidavit from Mr. Martzall detailing Lake Lite's interactions with Universal Forest Products. The motion is now ripe for ruling.

## II. STANDARD OF REVIEW

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of personal jurisdiction. Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* In ruling on such a motion, a court must first determine whether the plaintiff has made out a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At that stage, a court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782. If the plaintiff meets that initial burden but there

---

[1] According to Universal Forest Products, the products in question have only been sold by Universal Consumer Products and by Maine Ornamental, not by Universal Forest Products, which is primarily a holding company and does not sell any products at all in this category of products. [DE 21-1; DE 25 p. 5].

3

are material factual disputes, the Court must then hold an evidentiary hearing, at which point the plaintiff must prove any facts supporting jurisdiction by a preponderance of the evidence. *Hyatt*, 302 F.3d at 713.

### III. DISCUSSION

Universal Forest Products moves to dismiss all claims against it for lack of personal jurisdiction. For each of the claims at issue, the Court has personal jurisdiction over a defendant to the same extent a state court in this forum could exercise personal jurisdiction over that defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Here, Indiana's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted under federal law. *Id.*; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) ("Indiana's long-arm provision now extends to the limits of the Constitution."). Therefore, to determine whether it may exercise jurisdiction over Universal Forest Products, the Court must decide "whether 'the exercise of jurisdiction comports with the limits imposed by federal due process.'" *Advanced Tactical*, 751 F.3d at 800 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 319 (1945). This requires that "individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign . . . .'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results

from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King*, 471 U.S. at 472–73. A party may also be subject to general jurisdiction, meaning jurisdiction over matters unrelated to the party's connection with the forum State, where the party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Ties Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Here, Lake Lite focuses solely on specific jurisdiction, and makes no effort to establish that Universal Forest Products is subject to general jurisdiction in Indiana.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton*, 465 U.S. at 775). The "constitutional touchstone" for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum States." *Burger King*, 471 U.S. at 474. The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)).[2]

---

[2] Neither party acknowledges the issue, but since Lake Lite's complaint asserts claims of patent infringement, the personal jurisdiction analysis as to those claims is governed by the law of the Federal Circuit. *Silent Drive, Inc. v. Strong Indus., Inc.* 326 F.3d 1194, 1201 (Fed. Cir. 2003). The remaining claims, which are not "intimately related to patent law," are governed by the law of the applicable regional circuit, the Seventh Circuit. *Id.*; *Polymer Tech. Sys., Inc. v. Jant Pharmacal Corp.*, No. 1:14-cv-1317, 2015 WL 1526058, at *1 (S.D. Ind. Apr. 3, 2015) (analyzing personal jurisdiction as to a patent infringement claim under Federal Circuit law, and

5

In arguing that Universal Forest Products is subject to specific jurisdiction in Indiana, Lake Lite points to a number of contacts that employees of Universal Forest Products had with it relative to the products in question. It states that one of its employees was first contacted by Rick Preble of Universal Forest Products regarding the potential for Lake Lite to help develop a solar dock light product. Subsequently, Sue Labrie, another Universal Forest Products employee, contacted Lake Lite employees regarding the development of that product. Thereafter, Ms. Labrie "initiated, received or was copied on at least 50 emails related to the development of the solar dock light product by Lake Lite for [Universal Forest Products] and the compensation to be paid Lake Lite on account thereof." [DE 24-1 ¶ 5]. In one of those emails, Ms. Labrie asked that Lake Lite send a sample of one of the products to Universal Forest Products' office in Poulsbo, Washington. In another, she asked for information about Lake Lite's patents, and assured Lake Lite that it was protected by the mutual non-disclosure agreement it had signed. The contacts between the parties took place from July or September 2012 until August 2013, at which point the parties discontinued contact after failing to reach a licensing agreement.

Conspicuously absent from this account, however, is any mention of how Universal Forest Products' conduct connected it to *Indiana*, instead of just to a party that happened to be a citizen of Indiana. In fact, Mr. Martzall's affidavit—the sole support Lake Lite offered in response to the motion to dismiss—does not even use the word "Indiana," nor does that word appear in the statement of facts in Lake Lite's response brief.[3] Instead of demonstrating Universal Forest Products' contacts *with Indiana* relative to this litigation, Lake Lite only

---

a trade dress infringement claim under Seventh Circuit law). The difference does not affect the outcome here, though, so the Court need not further distinguish between the two sources of law.
[3] The only fact in the entire brief connecting any aspect of this litigation to Indiana is the statement that Indiana is "Lake Lite's home state." [DE 24 p. 11].

discusses Universal Forest Products' contacts *with Lake Lite* relative to this litigation, without indicating whether or how any of those contacts related to Indiana, such as, for example, by saying whether the Lake Lite employees involved in those interactions were located in Indiana. But that is not enough. As noted above, the focus of the specific jurisdiction inquiry is "the relationship among the defendant, the *forum*, and the litigation," *Walden*, 134 S. Ct. at 1121 (emphasis added), not the relationship among the defendant, the *plaintiff*, and the litigation. *Id.* at 1122 (stating that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *Polymer Tech*, 2015 WL 1526058, at *7 ("Plaintiff's argument inappropriately shifts the jurisdictional inquiry from Defendants' suit-related contacts with the forum to the Defendants' contacts with Plaintiff."). Lake Lite fails to show that Universal Forest Products' interactions with it reached into Indiana (physically or not), caused activity to take place in Indiana, or were otherwise connected to Indiana. Perhaps those connections exist, but the record does not permit a reasonable inference, as opposed to speculation, that Universal Forest Products' actions encompassed any contacts with the forum of Indiana.[4] Therefore, Lake Lite has failed to establish a *prima facie* case of personal jurisdiction over Universal Forest Products in Indiana.

In arguing that Universal Forest Products' relationship with Lake Lite is itself sufficient to create personal jurisdiction in this district, Lake Lite cites language from *Burger King*, in which the Supreme Court stated that "parties who 'reach beyond one state and create continuing

---

[4] Since those contacts are thus not enough to support jurisdiction anyway, the Court need not reach Universal Forest Products' argument that those contacts should not even be attributed to it since they were merely administrative services it provided on behalf of its subsidiaries. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945–46 (7th Cir. 2000) (holding that a parent company's provision of standard administrative services to its subsidiary did not create sufficient minimum contacts to support the exercise of jurisdiction).

7

relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). The Court's analysis made clear, though, that Burger King's residence in Florida was not sufficient to create personal jurisdiction in Florida over the Michigan-based defendant in a dispute over their franchise agreement. Rather, in finding that jurisdiction in Florida was proper, the Court relied on the facts that the parties' agreement "envisioned continuing and wide-reaching contacts with Burger King in Florida," entailed "long-term and exacting regulation of [the defendant's] business from Burger King's Miami headquarters," and "required payments in Miami," among others. *Id.* at 480. The defendant had also "carried on a continuous course of direct communications by mail and by telephone" with Burger King's Miami headquarters, and "it was the Miami headquarters that made the key negotiating decisions out of which the instant litigation arose." *Id.* at 481. The Court also noted that substantial evidence showed that the defendant "most certainly knew that he was affiliating himself with an enterprise based primarily in Florida," and the parties' agreement specified that it was governed by Florida law. *Id.*

Those types of connections to the forum state are entirely absent from the record in this case. For example, there is no indication where the Lake Lite employees with whom Universal Forest Products interacted were located, whether in Indiana or elsewhere, so the Court can only speculate as to whether Universal Forest Products' contacts with those employees reached into Indiana. And though the complaint alleges that Lake Lite continually modified the product in question at Universal Forest Products' request, there is no indication where it performed that work. Nor is it apparent that Universal Forest Products subjected itself to any obligations or oversight in Indiana. Further, there is no evidence that Universal Forest Products knew it was

interacting with an Indiana entity or that its contacts with Lake Lite had anything to do with the State of Indiana.

The Seventh Circuit has also found that a defendant initiating the relationship with the plaintiff can be an important fact in support of exercising jurisdiction over that defendant in the plaintiff's home state. *E.g.*, *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283–84 (7th Cir. 1990); *Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214, 216–17 (7th Cir. 1985); *Madison Consulting Grp. v. South Carolina*, 751 F.2d 1193, 1202–03 (7th Cir. 1985); *see N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 494 (7th Cir. 2014). Here, Lake Lite alleges that a Universal Forest Products employee initiated their relationship by contacting its vice president to discuss jointly developing the product, so that consideration could have potentially helped its case.

The relevance of that consideration, though, is still the contact it represents between the defendant and *the forum state*; when the conduct that initiates the relationship does not itself involve the forum state, it is not enough to support jurisdiction, even if it initiates a relationship with a resident of that state. *Compare Hall's Specialties*, 758 F.2d at 216–17 (finding no personal jurisdiction even though the defendant initiated the relationship, since he did not knowingly cause his contact to enter the forum state), *and Solo Cup Co. v. First Sw. Vending & Food Serv.*, No. 07 C 4384, 2008 WL 2787442, at *5 (N.D. Ill. July 17, 2008) (finding no personal jurisdiction where the defendant initiated the relationship through contacts that occurred outside of the forum state), *with Madison Consulting*, 751 F.2d at 1202–03 (finding personal jurisdiction proper in part because the defendant initiated the relationship by placing a phone call to the plaintiff in the forum state), *and Heritage House*, 906 F.2d at 278, 283–84 (finding personal jurisdiction where the defendant initiated the relationship through a letter sent to the plaintiff in

the forum state and through emails sent to an employee located in that state). There is no indication here as to how Universal Forest Products contacted Lake Lite, or whether it involved a communication inside of or directed to Indiana. As far as is apparent from the record, Universal Forest Products could have met in person in Michigan with a Lake Lite employee based outside of Indiana, which would not have created any link between Universal Forest Products and Indiana. That fact thus does not establish jurisdiction, either.

Finally, Lake Lite argues that jurisdiction is proper in this venue because Universal Forest Products should have known "that its actions would be felt most in Indiana, Lake Lite's home state." [DE 24 p. 11]. This argument falls short, too, for similar reasons.[5] As the Supreme Court discussed in *Walden*, "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 134 S. Ct. at 1125 (noting also that "*Calder* made clear that a mere injury to a forum resident is not a sufficient connection to the forum"). Thus, even though the plaintiff in that case was a resident of and felt the resulting harm in Nevada, jurisdiction in Nevada was improper where the defendant's conduct occurred entirely in Georgia. *Id.* at 1124–26. Those facts contrasted with *Calder*, where jurisdiction was proper in the plaintiff's home state of California since the defendant wrote an allegedly defamatory article using sources in California, published it in a

---

[5] Lake Lite does not raise or develop any argument based on any products being sold in this venue, nor did it make any attempt to counter Universal Forest Products' evidence that Universal Forest Products has not sold any of the products in question—that any sales were by the subsidiaries only. Accordingly, the Court addresses only the argument Lake Lite has raised, which is that it felt the harm in this venue, not whether any harm actually occurred in this venue that could give rise to personal jurisdiction over Universal Forest Products.

magazine distributed most heavily in California, and damaged the plaintiff's reputation most severely amongst the public in California. 465 U.S. at 788–91. Here, as previously discussed, even if Lake Lite felt harm in Indiana by virtue of its Indiana residence, there is no indication that any of Universal Forest Products' conduct occurred in, was directed at, or connected it to Indiana in any meaningful way.

In sum, there is no evidence that Universal Forest Products reached outside of its own state or that it has directed any of its activities towards Indiana in particular. And Universal Forest Products' interactions with a party that happens to be an Indiana citizen do not alone create the requisite contacts with the State of Indiana to justify exercising personal jurisdiction over it in an Indiana court. *Walden*, 134 S. Ct. at 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Advanced Tactical*, 751 F.3d at 802. Accordingly, Lake Lite has failed to establish that Universal Forest Products had such minimum contacts with the State of Indiana that exercising personal jurisdiction over it in this venue would comport with the Due Process Clause. The Court therefore need not also consider whether exercising personal jurisdiction over Universal Forest Products would offend "traditional notions of fair play and substantial justice."[6] *N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 496

---

[6] Lake Lite's argument on that point that Universal Forest Products would likely contest its amenability "to jurisdiction for its role in this matter in any jurisdiction" is misplaced, though, as it confuses liability with jurisdiction. [DE 24 p. 11]. Even if Universal Forest Products denies liability, it is at the very least subject to personal jurisdiction in Michigan, where it is incorporated and has its principal place of business. And if Lake Lite is concerned about

(7th Cir. 2014). Because Lake Lite has not met its burden of making a *prima facie* showing that Universal Forest Products is subject to personal jurisdiction in Indiana, the motion to dismiss must be granted.

## IV.  CONCLUSION

Universal Forest Products' motion to dismiss [DE 20] is GRANTED, and Universal Forest Products is DISMISSED as a defendant in this action.

SO ORDERED.

ENTERED:  August 3, 2015

>／s/ JON E. DEGUILIO  
> Judge  
> United States District Court

---

duplicating its litigation efforts or the potential for inconsistent judgments, it could proceed against all three defendants in Michigan, where they are each incorporated.